UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FALLON W. JOHNSON ET AL.                CIVIL ACTION

VERSUS                                  NO. 10-1756

CHARLES ACOSTA ET AL.                   MAGISTRATE JUDGE
                                        JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

This is an employment discrimination action filed by plaintiff, Fallon W. Johnson, against her former employer, Sprint/United Management Company and/or Sprint Nextel Corporation (collectively "Sprint"). Johnson alleges that Sprint discriminated against her on the basis of her pregnancy when Sprint terminated her employment. Plaintiff's Petition for Damages, Exhibit 1 to defendants' Notice of Removal, Record Doc. No. 1-1 at pp. 4-7.

Two individual defendants were previously dismissed from this lawsuit. Record Doc. No. 25 (dismissing defendant Megan Brandt without prejudice); Record Doc. No. 32 (dismissing defendant Charles Acosta with prejudice). Johnson's claim for "wrongful termination" and all claims brought by her co-plaintiff, Angelle Milliet Tabor, against Sprint were dismissed with prejudice. Record Doc. No. 32. Thus, Johnson's pregnancy discrimination claim against Sprint is the only claim remaining in this action. Although Johnson did not cite any legal basis for her pregnancy discrimination claim in

her Petition for Damages, which was removed to this court, she does not dispute defendant's allegation that her claim arises under Title VII, as amended by the Pregnancy Discrimination Act.  42 U.S.C. § 2000e(k); 42 U.S.C. § 2000e-2(a)(1).

This matter was referred to the undersigned magistrate judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.  Record Doc. No. 26.

Defendant filed a motion for summary judgment, supported by excerpts from depositions, the declaration under penalty of perjury of Sprint's District Manager Charles Acosta[1] and several documentary exhibits.  Record Doc. No. 49.  Sprint contends that Johnson cannot establish a prima facie case of pregnancy discrimination.  Defendant also argues that, even if Johnson could establish a prima facie case, she has no evidence to rebut Sprint's legitimate, nondiscriminatory reasons for firing her.

Plaintiff filed a timely opposition memorandum, supported by the complete transcripts of four depositions and all of the exhibits attached to the depositions.  Record Doc. No. 54.  Because each deposition transcript contains the unredacted birth date and social security number of the deponents, as well as birth dates of some of their minor

---

[1]Contrary to plaintiff's argument, unsworn declarations under penalty of perjury pursuant to 28 U.S.C. § 1746 are competent summary judgment evidence.  Fed. R. Civ. P. 56(c)(4); official comments to 2010 amendments to Fed. R. Civ. P. 56(c), Federal Civil Judicial Procedure and Rules 261(2011 rev. ed. West pamph.).

children, the transcripts were filed in violation of Fed. R. Civ. P. 5.2(a).  Accordingly, I ordered the Clerk of Court to remove those pages from the record and ordered plaintiff's attorney to comply with Fed. R. Civ. P. 5.2(a) by redacting any of the pages that he wants the court to consider and filing the redacted pages in the record.  Record Doc. No. 58.

Sprint received leave to file a reply memorandum.  Record Doc. Nos. 55, 56, 57. Sprint objects that Johnson filed entire deposition transcripts without citing to "particular parts of [these] materials in the record," as required by Fed. R. Civ. P. 56(c)(1)(a).  Based on Fed. R. Civ. P. 56(c)(3), which provides that "[t]he court need consider only the cited materials, but it may consider other materials in the record," Sprint asks the court to disregard those portions of the depositions that Johnson does not cite in her memorandum, and particularly to ignore any inadmissible portions of the depositions and attached exhibits.

The court disapproves of plaintiff's indiscriminate filing of entire deposition transcripts, totaling 549 pages plus numerous exhibits, rather than only those portions of the depositions on which she relies in her opposition memorandum.  Rule 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 379-80 (5th Cir. 2010) (quotation omitted).

Nonetheless, I have reviewed all of the deposition transcripts and their attached exhibits.  Much of the content of the four depositions is irrelevant to the issues raised by defendant's summary judgment motion.  In addition, they contain numerous inadmissible statements, including hearsay, rumor, speculation and subjective beliefs based on vague notions of "fairness," rather than on facts.  In finding the undisputed facts for purposes of defendant's summary judgment motion, I have ignored the inadmissible content of the depositions.  As discussed below, the admissible evidence confirms that Johnson cannot establish a prima facie case of pregnancy discrimination and that, even if she could establish a prima facie case, she cannot rebut Sprint's legitimate nondiscriminatory reasons for terminating her employment.

Having considered the complaint, the record, the submissions of the parties and the applicable law, IT IS ORDERED that Sprint's motion for summary judgment is GRANTED for the following reasons.

I.      STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 was revised to "take effect on December 1, 2010, and shall govern in

4

all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending." Order of the Supreme Court of the United States (Apr. 28, 2010), www.supremecourt.gov/orders/courtorders/frcv10.pdf. Because "the standard for granting summary judgment remains unchanged" by the revision, Federal Civil Judicial Procedure and Rules, 2010 Amendments Advisory Committee Notes, at 260 (West 2011 rev. ed. pamph.) (hereafter "Advisory Committee Notes"), I find it just and practicable to apply the revised Rule 56 in this proceeding.

Revised Rule 56 establishes new procedures for supporting factual positions:

(1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
　　　(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
　　　(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
(2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
(3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
(4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23; accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders

all other facts immaterial."  Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F.

App'x at 371.

 "Factual controversies are construed in the light most favorable to the nonmovant,

but only if both parties have introduced evidence showing that an actual controversy

exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray

v. Earle, 405 F.3d 278, 284 (5th Cir. 2005).  "We do not, however, in the absence of any

proof, assume that the nonmoving party could or would prove the necessary facts."

Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted)

(emphasis in original).  "Conclusory allegations unsupported by specific facts . . . will

not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations

. . . to get to a jury without any "significant probative evidence tending to support the

complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477

U.S. at 249).

 "Moreover, the nonmoving party's burden is not affected by the type of case;

summary judgment is appropriate in any case where critical evidence is so weak or

tenuous on an essential fact that it could not support a judgment in favor of the

nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation

omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291

(5th Cir. 2009).

II.     FACTUAL BACKGROUND

The competent summary judgment evidence establishes the following undisputed material facts.  Plaintiff, Fallon Johnson, who was then known as Fallon Walter, began working as a sales associate at Sprint's retail store in Slidell, Louisiana in December 2005.  Angelle Tabor, who was then known as Angelle Ducros, was promoted from assistant manager to manager of the same store in the fall of 2007.  Johnson became the assistant manager soon after Tabor was promoted.  Johnson and Tabor were both fired on March 2, 2009.  Johnson was more than eight months pregnant at that time.  Tabor was not pregnant.

Charles Acosta was then and still is the district manager in charge of Sprint's retail operations in southeast Louisiana.  He was Tabor's direct supervisor and the person who fired Johnson and Tabor.

Johnson claims in this lawsuit that Acosta wanted to get rid of her because she was pregnant and about to go out on maternity leave, and that he violated the Pregnancy Discrimination Act by terminating her employment.  She admittedly never experienced any pregnancy-based discrimination by Acosta or any other Sprint employee before she was fired.

Sprint had in place a progressive discipline policy under which employees with job performance problems would receive, in ascending order of severity, counseling, a

8

verbal warning, a written warning or a final written warning. A final written warning remained in effect for twelve (12) months. The next step after a final written warning was termination of employment. The form for written warnings was called an "Action Plan for Improvement." The form stated that the employee being warned "must attain and maintain satisfactory performance in the future and follow all company policies or further corrective action may result up to, and including termination of your employment." The form also stated that managers could "use any of these corrective action techniques that, in their discretion, (with the support of Human Resources), are appropriate to the individual circumstances." Defendant's Exh. E, Record Doc. No. 49-9.

One of the tools used by Sprint to gauge the success of its stores and its employees was a customer satisfaction survey, which was scored and reported monthly for each store. On November 3, 2008, Tabor gave Johnson a verbal warning based on the Slidell store's failure to meet its required minimum customer satisfaction score of 88 percent for the preceding month.

On December 5, 2008, Tabor gave Johnson her first written warning for "unacceptable performance" because the Slidell store had failed to meet its minimum customer satisfaction score in July, October and November 2008.[2] The "action plan for

---

[2]The store received scores of 87.9 percent in August and September. Although these appear to be below the minimum, Tabor testified that they were acceptable scores. Deposition of Angelle M. Tabor at p. 110.

improvement" required Johnson to attain the minimum customer satisfaction score each month by spending at least 80 percent of her day on the sales floor coaching her subordinate employees and to create "an action plan to ensure that [customer satisfaction score] targets are attained each and every month." The written warning remained in effect for six months.

On February 6, 2009, Tabor gave Johnson a final written warning, the next disciplinary step, for "unacceptable performance." Although the store had achieved a customer satisfaction score above the minimum for December 2008, its score for January 2009 was only 67.8 percent. The "action plan for improvement" on the final written warning was the same as on the previous written warning. The final written warning remained active for twelve (12) months.

Tabor also received a final written warning for her own unacceptable performance, based on the same series of inadequate customer satisfaction scores. Her final written warning was still active on the day she was fired.

A Sprint Risk Prevention Analyst, Megan Brandt, conducted an all-day audit of the Slidell store on Monday, February 23, 2009 (which was the day before Mardi Gras). Store audits are conducted on a random basis and are intended to provide a neutral assessment of the operations and quality controls of Sprint retail stores.

Tabor had been assigned by Acosta to work at a store on Airline Highway in Baton Rouge on that day because the Baton Rouge store did not have a manager. Johnson was not scheduled to work that Monday.  Therefore, the Slidell store's Lead Retail Consultant, Sarah Brown-Saunders (then known as Sarah Brown), assisted Brandt with the audit.

The evidence conflicts regarding whether Tabor, Johnson and Brown-Saunders had prior notice that the audit would occur on February 23, 2009.  Acosta declared and Tabor testified that, pursuant to Sprint policy, the audit was <u>not</u> announced in advance to the store's employees.  Tabor testified that she first learned of it when Brown-Saunders called her at the Baton Rouge store to tell her that Brandt was at the Slidell store and she then called Acosta to let him know.  She testified that Acosta said he knew about a week in advance that the audit would occur, but was not allowed to tell her.

However, Johnson and Brown-Saunders both testified that they had prior notice of the audit and were able to prepare for it in the preceding days.  Resolving this fact issue in plaintiff's favor (<u>i.e.</u>, accepting Johnson's version) solely for purposes of the pending summary judgment motion, the court will assume without deciding that Tabor, Johnson and Brown-Saunders had prior notice that the audit would occur on or about February 23, 2009.

11

Brown-Saunders was not a manager and did not have the keys or codes to access some areas of the store or its information, so she was unable to provide Brandt with information to answer a few questions on the audit form.

Brandt did not score the unanswered questions and did not deduct any points for any unanswered questions.  She scored only the questions that were answered.

At the end of the day, Brandt told Brown-Saunders that the store had "barely passed" the audit with a score of 82 percent.  Brown-Saunders and Brandt telephoned Tabor and Johnson with the news that the store had "barely passed" the audit.

Tabor talked to Acosta about the audit results that night while she was driving back from Baton Rouge.  Acosta told Tabor that she and her store "did horrible" on the audit.  He said he was very disappointed in her because he had expected better performance from her.  Tabor deposition at pp. 36, 44-45.

The record contains only two instances when Acosta mentioned Johnson's pregnancy in connection with her work.  First, according to Tabor's testimony, Acosta asked Tabor when plaintiff was going on maternity leave during his telephone conversation with Tabor the night of the audit.  Tabor told him it would be in March. During that conversation, Acosta criticized both Tabor's and Johnson's job performance. He told Tabor that Johnson was "holding back" Tabor and the store.  He told Tabor that she should either try to rehabilitate Johnson or fire her and that, whichever action Tabor

12

took, it should happen quickly.  Tabor understood Acosta to mean that Johnson was doing a poor job as assistant store manager and was the reason for the store's consistently low customer satisfaction scores.  Tabor thought at that time that Acosta really wanted Johnson terminated and replaced because Johnson was on a final written warning and he thought she was not doing a good enough job to continue working at Sprint.  Tabor also understood Acosta to mean that Tabor alternatively could try to rehabilitate Johnson by getting her more focused on doing a good job and getting her back to doing the good job that she had been doing at some time in the past.  Tabor deposition at pp. 35-38, 41-43, 45-46, 49-50.

The second record instance when Acosta mentioned Johnson's pregnancy was in Brown-Saunders's testimony.  She testified that Johnson had been sick a lot and on bed rest at various times during her pregnancy and had been unable to work during those times.  Brown-Saunders stated that Acosta told her a few days before the audit that she might have to conduct the audit if Johnson was not at the store because of illness.  Brown-Saunders responded that she would do whatever was necessary.  She testified that Acosta said:  "Well, you know, her being pregnant, and being sick, it puts a damper on the store; and makes more responsibility for everyone."  Deposition of Sarah Brown-Saunders at p. 24.  Brown-Saunders recalled Acosta's comments as being to the effect that plaintiff's absences due to illness resulted in "there being, you know, more

responsibility placed on others; and putting our store at risk." Id. at p. 25; see also id. at p. 60 ("Now, the conversation that he and I had before the audit, um, was about her, you know, missing; and the store being put at risk; that's what he said about her pregnancy . . . .").

The day after the audit (which was Mardi Gras), Tabor again worked at the Baton Rouge store.  Brandt audited the Baton Rouge store that day.  Tabor and Brandt discussed the major factors that had hurt Tabor's audit score for the Slidell store and what Tabor needed to do to fix those problems.

On Wednesday, two days after the Slidell store audit, Brandt told Tabor that she had miscalculated the initial score and that when Brandt had re-calculated it correctly, the score had dropped to 79.07 percent, which was "unacceptable."  Tabor told Johnson about the reduced score on the same day.

Tabor and Johnson were upset about the failing score, but did not expect to be fired for it.  Although no points were deducted from the audit for unanswered questions, they both testified that they believed their store would have passed the audit if one of them had been at the store to provide Brandt with the information that Brown-Saunders had been unable to access.

Acosta denies that he ever knew of an initially passing score or that it was changed to a failing score.  He declares that the only score he ever knew about was the failing

14

score of 79 percent.  The court resolves this fact dispute in plaintiff's favor by accepting for present purposes only the testimony of Tabor, Johnson and Brown-Saunders that Brandt told them on the day of the audit that the store had barely passed with a score of 82 percent and in favor of Tabor's testimony that she and Acosta discussed the score that night, and that Acosta subsequently learned that Brandt had recalculated the score to a failing 79 percent.

Acosta was not involved with preparing or calculating the audit score.  There is no evidence either that Brandt falsely stated that she had initially miscalculated the audit score or that the revised score incorrectly reflected her actual findings.  Although Johnson speculated in her deposition that Acosta somehow had contrived to change the score, no evidence supports that pure conjecture.

When Acosta learned of the unacceptable audit score, he knew that both Tabor and Johnson were under active, final written warnings.  He decided that the appropriate corrective action for the unacceptable audit score in these circumstances was to terminate Tabor's and Johnson's employment.  He contacted his supervisor, Regional Director Carl Brown, to discuss his proposed decision.  Brown agreed with Acosta's recommendation.

On March 2, 2009, Acosta went to the Slidell store and fired both Tabor and Johnson for the stated reason that their store had received an unacceptable score on the

audit while they were both under a final written warning.  He averred in his declaration that plaintiff's pregnancy had nothing to do with his decision.

Tabor testified that she did <u>not</u> believe that Acosta fired plaintiff because of her pregnancy or that the pregnancy was a factor in his decision.  She testified that Acosta had no problem with Johnson being pregnant.  She believed that he fired Johnson because he did not think she was doing a good job.  Tabor knew that Acosta was unhappy with Tabor's own performance even before the audit.  She stated that, if he had to fire her for performance deficiencies, he also had to fire Johnson because "whatever happened to one – whatever happened to me as a store, would have to happen to" Johnson, her assistant manager, and because both were on a final written warning.  She concluded that Acosta "just was ready for us to be gone."  Tabor deposition at pp. 83-84.

## III.   <u>ANALYSIS</u>

Sprint argues that Johnson cannot make out a prima facie case of pregnancy discrimination under either Title VII or the Louisiana Employment Discrimination Law, to whatever extent plaintiff may be asserting a claim under that state law.  Plaintiff's Petition for Damages, originally filed in Louisiana state court and removed to this court, did not specify the legal basis for her claim.  However, "Louisiana courts and federal courts applying Louisiana law have routinely looked to federal jurisprudence to interpret Louisiana employment discrimination statutes."  <u>Smith v. Amedisys Inc.</u>, 298 F.3d 434,

16

448 (5th Cir. 2002) (citing Nichols v. Lewis Grocer, 138 F.3d 563, 566 (5th Cir. 1998);

King v. Phelps Dunbar, L.L.P., 743 So. 2d 181, 187 (La. 1999)); accord George v. Home

Depot Inc., 51 F. App'x 482, 2002 WL 31319124, at *2 (5th Cir. Sept. 27, 2002) (citing

Nichols, 138 F.3d at 566; Hicks v. Cent. La. Elec. Co., 712 So. 2d 656, 658 (La. App. 1st

Cir. 1998)); LaBove v. Raftery, 802 So. 2d 566, 573 (La. 2001).  This includes claims

of pregnancy discrimination brought under Louisiana law.  Suire v. LCS Corr. Servs.,

Inc., 930 So. 2d 221, 225 (La. App. 3d Cir. 2006) (citing La. Rev. Stat. § 23:342; Brittain

v. Family Care Serv., Inc., 801 So. 2d 457, 460-61 (La. App. 2d Cir. 2001)).  Therefore,

analysis of plaintiff's claim under state law, if she brings such a claim, mirrors the

analysis under federal law.

Sprint alternatively argues that, even if plaintiff can establish a prima facie case,

she has no evidence to rebut its legitimate nondiscriminatory reasons for firing her.

A.     The Burden of Proof in a Pregnancy Discrimination Case

The Pregnancy Discrimination Act, which amended Title VII, prohibits employers

from discriminating against a female employee "because of or on the basis of pregnancy,

childbirth, or related medical conditions; and women affected by pregnancy, childbirth,

or related medical conditions shall be treated the same for all employment-related

purposes . . . as other persons not so affected but similar in their ability or inability to

work."  42 U.S.C. § 2000e(k).

The Pregnancy Discrimination Act "has been interpreted to provide equal treatment for pregnant women, not preferential treatment." Taylor v. Jotun Paints, Inc., No. 09-3801, 2010 WL 3720435, at *5 (E.D. La. Sept. 15, 2010) (Engelhardt, J.) (citing Urbano v. Cont'l Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998)).  Thus, the statute does not require an employer to overlook deficiencies in a pregnant employee's job performance, even if those deficiencies are caused by the pregnancy, unless the employer overlooks comparable deficiencies in the performance of non-pregnant employees. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003); Stout v. Baxter Healthcare Corp., 282 F.3d 856, 859-60 (5th Cir. 2002) (citing Dormeyer v. Comerica Bank-Ill., 223 F.3d 579, 583 (7th Cir. 2000)); Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 223 (5th Cir. 2001).

The court analyzes a Pregnancy Discrimination Act "claim in the same way that we analyze a Title VII discrimination claim.  A plaintiff can prove pregnancy-based discrimination either by direct or circumstantial evidence." McLaughlin v. W & T Offshore, Inc., 78 F. App'x 334, 337 (5th Cir. 2003) (citing Urbano v. Cont'l Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998)); accord Willis v. Coca Cola Enters., Inc., 445 F.3d 413, 420 (5th Cir. 2006); Laxton, 333 F.3d at 578.

When a plaintiff relies on circumstantial evidence to prove pregnancy discrimination, her claim is analyzed under the familiar McDonnell Douglas framework.

Willis, 445 F.3d at 420 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

(1973)); Stout, 282 F.3d at 859-60.

> Under this framework, the plaintiff must first create a presumption of
> discrimination by making out a prima facie case of discrimination.  The
> burden then shifts to the employer to produce a legitimate,
> nondiscriminatory reason for [plaintiff's] termination.  This causes the
> presumption of discrimination to dissipate.  The plaintiff then bears the
> ultimate burden of persuading the trier of fact by a preponderance of the
> evidence that the employer intentionally discriminated against her because
> of her protected status.
>
> To carry this burden, the plaintiff must produce substantial evidence
> indicating that the proffered legitimate nondiscriminatory reason is a
> pretext for discrimination.  The plaintiff must rebut each nondiscriminatory
> reason articulated by the employer.  A plaintiff may establish pretext either
> through evidence of disparate treatment or by showing that the employer's
> proffered explanation is false or "unworthy of credence."  An explanation
> is false or unworthy of credence if it is not the real reason for the adverse
> employment action.

Laxton, 333 F.3d at 578 (citations omitted).

The McDonnell Douglas burden-shifting framework does not apply, however,

when the plaintiff presents direct evidence of discrimination.  Dulin v. Bd. of Comm'rs,

646 F.3d 232, 244 (5th Cir. 2011); Rizzo v. Children's World Learning Ctrs., Inc., 84

F.3d 758, 762 (5th Cir. 1996) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S.

111, 121 (1985); Moore v. U.S. Dep't of Agriculture, 55 F.3d 991, 995 (5th Cir. 1995)).

"[I]f a plaintiff is able to produce direct evidence of discrimination, [s]he may prevail

without proving all the elements of a prima facie case." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (citing Trans World Airlines, 469 U.S. at 121).

B.      Plaintiff Has No Direct Evidence

Johnson argues that Acosta's two comments about her pregnancy are direct evidence of his discriminatory intent.  The first was his conversation with Brown-Saunders a few days before the audit when Acosta told her that she might have to conduct the audit if Johnson was not at the store because of illness.  Brown-Saunders testified that, during this conversation, Acosta said, "Well, you know, her being pregnant, and being sick, it puts a damper on the store; and makes more responsibility for everyone."  The second was Acosta's question to Tabor about when plaintiff was going on maternity leave, coupled with his instruction to Tabor that she should either fire Johnson or rehabilitate her, and do it quickly.

"Direct evidence is evidence which, if believed, proves the fact without inference or presumption." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005). "[S]tatements or documents which show on [their] face that an improper criterion served as a basis–not necessarily the sole basis, but a basis–for the adverse employment action are direct evidence of discrimination." Id. at 993 (quotation omitted).  "A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail" in

defeating defendant's summary judgment motion.  <u>Nichols v. Loral Vought Sys. Corp.</u>, 81 F.3d 38, 40 (5th Cir. 1996).

I find that Acosta's comments are <u>not</u> direct evidence of discrimination.  The Pregnancy Discrimination Act allows an employer to consider an employee's pregnancy for the same employment-related purposes as non-pregnant persons who are similar in their ability or inability to work.  Acosta's comment that plaintiff's pregnancy-related <u>illness</u> led to more responsibility being placed on other employees was not only a correct statement of observable fact, but would apply equally to any employee who had missed multiple days of work because of non-pregnancy-related sickness.  The Pregnancy Discrimination Act "does not protect a pregnant employee from being discharged for being absent from work even if her absence is due to pregnancy or to complications of pregnancy, unless the absences of nonpregnant employees are overlooked."  <u>Stout</u>, 282 F.3d at 860 (quotation omitted); <u>accord</u> <u>Laxton</u>, 333 F.3d at 578.  Acosta's remarks to Brown-Saunders about Johnson having missed work in the past due to illness and the possibility that Brown-Saunders might have to fill in for Johnson if she was sick again are legitimate subjects of which an employer may take notice for work-related purposes. The comments are not direct evidence of discrimination.

Similarly, Acosta's question to Tabor about plaintiff's upcoming maternity leave is not direct evidence of discrimination.  Obviously, managers like Acosta and Tabor

21

need to plan ahead for staffing needs when a pregnant employee takes maternity leave, just as they do when a non-pregnant employee takes leave for a scheduled medical procedure or other reason.  Acosta's question about when Johnson would take her maternity leave does not on its face indicate any discriminatory intent.

Even when coupled with the rest of his comments to Tabor during their conversation on the night of the audit, Acosta's question is not direct evidence of discriminatory intent.  His conversation with Tabor consisted of criticism of Tabor's and Johnson's poor job performance.  He knew that both of them were on final written warnings after several months of receiving inferior customer satisfaction scores and that they had just "barely passed" the store audit that day.  Acosta apparently blamed Johnson more than Tabor for the store's poor performance because, while he told Tabor that she needed to redeem herself, he said that Johnson was "holding back" Tabor and the store. Based on his criticism of plaintiff's job performance, Acosta told Tabor that she should quickly either try to rehabilitate Johnson or fire her.  Acosta's statements, facially and in the context of the whole conversation, are "simply insufficient" to qualify as direct evidence because they require the fact-finder to infer "some discriminatory intent. Because inference is necessary, it is not direct evidence."  McLaughlin, 78 F. App'x at 337 (citation omitted).

In the absence of any direct evidence of discrimination, Johnson must satisfy the McDonnell Douglas test to defeat Sprint's motion for summary judgment.

C.     Plaintiff Cannot Establish a Prima Facie Case

To establish a prima facie case of pregnancy discrimination with circumstantial evidence, plaintiff must show that "(1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) others not in the protected class who are similarly situated were more favorably treated."  Mascorro v. Am. Funds Serv. Co., No. CIV.A.SA05CA590-FB, 2006 WL 3782861, at *2 (W.D. Tex. Nov. 20, 2006) (citing Urbano, 138 F.3d at 206); accord Laxton, 333 F.3d at 578.

For purposes of its summary judgment motion, Sprint does not dispute that Johnson can establish the first three elements.  Sprint argues that she cannot satisfy the fourth prong because she has no evidence that non-pregnant employees who were similarly situated to plaintiff were treated more favorably than she.

To establish this prong, plaintiff "must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained."  Wallace, 271 F.3d at 221 (quotation, brackets and citations omitted).  "In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if

23

he did, . . . employees [outside plaintiff's protected class] who engaged in similar acts were not punished similarly.'" <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1090 (5th Cir. 1995).

Johnson has failed to identify <u>any</u> similarly situated, non-pregnant employee who was not terminated when the other employee performed deficiently or violated a company policy while under an active final written warning. To the contrary, Sprint also fired Tabor, a non-pregnant managerial employee, at the same time as it fired assistant manager Johnson, for the <u>identical</u> conduct.

Because Johnson has failed to carry her burden of proof to establish the fourth prong of her prima facie case of pregnancy discrimination, defendant is entitled to summary judgment in its favor as a matter of law.

D.    <u>Plaintiff Cannot Rebut Defendant's Legitimate Nondiscriminatory Reasons</u>

Even assuming, without deciding, that Johnson could establish a prima facie case of pregnancy discrimination, Sprint has produced legitimate nondiscriminatory reasons for firing her. As of February 6, 2009, Johnson was under a final written warning based on her record of numerous unsatisfactory customer satisfaction scores since July 2008. Pursuant to the final written warning, Johnson was required to "attain and maintain satisfactory performance in the future and <u>follow all company policies or further corrective action may result up to, and including termination</u> of your employment."

24

Defendant's Exh. E, Record Doc. No. 49-9 (emphasis added).  Managers could "use any of these corrective action techniques that, in their discretion, (with the support of Human Resources), are appropriate to the individual circumstances." Id.  The next step after a final written warning in Sprint's progressive disciplinary policy was termination of employment.

The initial audit score of 82 percent was "barely passing," which led Tabor to discuss with Brandt the next day the major factors that had hurt the audit score and what Tabor needed to do to fix those problems.  When Acosta learned of the low audit score, he told Tabor that Johnson was "holding back" Tabor and the store, and he asked Tabor either to quickly find a way for Johnson to improve her performance or to fire her.  Thus, regardless of the passing score, Acosta was already unhappy with Johnson's job performance.  When he learned that the corrected score was an unacceptable 79 percent, he determined, with the concurrence of his supervisor, that Tabor's and Johnson's entire record of performance problems warranted firing them both.

Because Sprint "has articulated a nondiscriminatory reason for its employment action, the next step of the analysis returns the burden to [plaintiff].  Moreover, this burden is one of persuasion, not merely production of evidence." Baker v. Am. Airlines, Inc., 430 F.3d 750, 754 (5th Cir. 2005); accord Dulin, 646 F.3d at 245.  The burden of

persuasion therefore shifts to Johnson, but her evidence fails to establish a triable genuine issue of fact as to whether defendant's proffered reasons were pretextual.

Plaintiff argues that the store was on target to achieve a satisfactory customer satisfaction score for the month of February 2009 and that she therefore had achieved the goal of the final written warning.  Without any supporting evidence, she questions the motives behind the revision of the audit score from barely passing to failing.  Johnson cites Tabor's testimony that Tabor did not know of any other Sprint managers who had been fired for receiving a failing audit score while they were under a final written warning based on inadequate customer satisfaction scores.  Plaintiff contends, again without any evidentiary support, that this amounted to a Sprint policy, rather than merely Tabor's personal knowledge.

Johnson also asserts that other pregnant employees were fired from the same store after she was fired.  The only evidence of this is the testimony of Amanda F. Smith, who was a salesperson at the Slidell store during Johnson's tenure as assistant manager. Smith testified that she was fired in November 2009 when she was eight months pregnant, while she was on a final written warning.  Using the same attorney as Johnson, Smith also sued Sprint for alleged pregnancy discrimination.  Deposition of Amanda F. Smith, at pp. 17, 36-37, 41.

Based on these facts and suppositions, Johnson argues that Acosta had no legitimate justification to fire her and that the inference should be drawn that he acted out of discriminatory animus to avoid paying her salary and benefits while she was out on maternity leave.  Plaintiff's arguments ignore the undisputed facts that her final written warning remained in effect for 12 months and that she was required to meet her goals and follow all company policies for the remaining 11 months of that time, or face further disciplinary action.  The next disciplinary step while under a final written warning was termination.  Although the store apparently met its customer satisfaction goal in February 2009, that was only the first month of a 12-month period during which Johnson was required to continue to meet all goals and follow all company policies.  The adequate customer satisfaction score for February did not purge her final written warning, which remained in effect.  The store for which Johnson and Tabor were responsible then received an unacceptable score on the audit.  This was a clear failure to meet a required goal and/or violation of company policy and was a legitimate nondiscriminatory reason to fire Johnson, whose job performance had been problematic for several preceding months.

As to defendant's firing of Smith while she was pregnant, the Pregnancy Discrimination Act does <u>not</u> prohibit an employer from taking disciplinary action, including termination, against a pregnant employee.  The Pregnancy Discrimination Act

does not require an employer to overlook deficiencies in a pregnant employee's job performance, even if those deficiencies are caused by the pregnancy, unless the employer overlooks comparable deficiencies in the performance of non-pregnant employees. Laxton, 333 F.3d at 578; Stout, 282 F.3d at 859-60; Wallace, 271 F.3d at 223. Smith–like Johnson–was on a final written warning, the last step before termination in defendant's graduated discipline scale, when she was fired. Thus, plaintiff's argument that other pregnant employees were fired, even if true, proves nothing in the absence of any proof of discriminatory animus, which she has not provided.

Essentially, Johnson disagrees with Acosta's assessment of her performance. However, it is immaterial whether Acosta's decision may have been based on incorrect facts, so long as it was not motivated by discriminatory animus. Moss v. BMC Software, Inc., 610 F.3d 917, 926 (5th Cir. 2010); Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir. 2001). Defendant was free to make decisions concerning plaintiff's at-will employment based on any criteria it chose, so long as its decision was not motivated by discriminatory animus. Scales v. Slater, 181 F.3d 703, 711 (5th Cir. 1999). The law is well established that anti-discrimination laws "cannot protect [workers] . . . from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1508 (5th Cir. 1988) (citation omitted); accord Mato, 267 F.3d at 453.

The relevant question is <u>not</u> "whether or not [Acosta's] perception of [Johnson's] performance was accurate," but whether she has carried her burden to "provide the court with relevant record facts on which to base a contrary conclusion" and draw the inference that Acosta's false reasons were pretexts for discrimination.  <u>Bright v. GB Bioscience Inc.</u>, 305 F. App'x 197, 205 (5th Cir. 2008).  Johnson "has proffered no evidence suggesting [Acosta's declaration] to be less than truthful." <u>Moss</u>, 610 F.3d at 927 (citing <u>EEOC v. WC&M Enters., Inc.</u>, 496 F.3d 393, 398 (5th Cir. 2007)).  Furthermore, Tabor's testimony about Acosta's dissatisfaction with Johnson's job performance even before the failing audit score supports Acosta's declaration that his reasons for firing Johnson were based on her performance and disciplinary record, not her pregnancy.

Plaintiff's disagreement with Acosta's reasons for his employment decision does not provide a basis for this court to "engage in the practice of second guessing. . . .  Even if evidence suggests that a decision was wrong, we will not substitute our judgment . . . for the employer's business judgment. . . .  Such disputes do not support a finding of discrimination and have no place in front of a jury." <u>Scott v. Univ. of Miss.</u>, 148 F.3d 493, 509-10 (5th Cir. 1998), <u>abrogated on other grounds by Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 72 (2000) (citations omitted); <u>accord</u> <u>Moss</u>, 610 F.3d at 926; <u>Mato</u>, 267 F.3d at 452.  No genuine issue of material fact concerning Acosta's discriminatory animus can be inferred from plaintiff's evidence or her speculation about his motives.  Plaintiff's

mere subjective belief, "supported solely by her own self-serving [testimony]," <u>Strong v. Univ. Health Care Sys., L.L.C.</u>, 482 F.3d 802, 807 (5th Cir. 2007), that she was fired because of her pregnancy is insufficient to support an inference of defendant's discriminatory intent. <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 654 (5th Cir. 2004).

Johnson has pointed to no record evidence to create a genuine fact issue that Acosta's reasons were false or unworthy of belief. No inference can be drawn that defendant discriminated against her based on her pregnancy. Accordingly, Sprint is entitled to judgment in its favor as a matter of law.

<u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is GRANTED and that plaintiff's claims are DISMISSED WITH PREJUDICE, plaintiff to bear all costs of this proceeding. Judgment will be entered accordingly.

New Orleans, Louisiana, this __20th__ day of September, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE